IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Barksdale, :
     Petitioner :
            :
     v.      : No. 1426 C.D. 2019
            : Submitted: June 12, 2020
Pennsylvania Board of Probation and :
Parole and SCI Mercer Records :
Department,       :
     Respondents :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON      FILED: September 9, 2020

    Jeffrey Barksdale (Barksdale) petitions for review from an order of the Pennsylvania Board of Probation and Parole (Board),[1] dated September 10, 2019, confirming his parole violation maximum date as April 30, 2019. Previously, this Court vacated the Board's order calculating the same maximum date because the Board did not sufficiently explain its calculation to permit a challenge. *See Barksdale v. Pa. Bd. of Prob. & Parole*, 217 A.3d 469 (Pa. Cmwlth. 2019) (*Barksdale I*). Following remand, the Board explained it calculated the maximum date from Barksdale's sentencing date on new charges, May 31, 2018. Barksdale argues the Board should have calculated his maximum date using the date it issued its detainer against him, November 16, 2017. Discerning no error below, we affirm.

---

[1] Subsequent to the filing of the petition for review, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa. C.S. §§6101, 6111(a).

## I. Background

Subsequent to our opinion in *Barksdale I*, Barksdale was released on parole on September 23, 2019. Because our published decision in *Barksdale I* sets forth the facts in some detail, it is unnecessary to recount them here. Accordingly, the background in *Barksdale I* is incorporated by reference, and only those facts necessary to our disposition follow.[2]

In 2011, at the time of his parole, Barksdale had a maximum sentence date of October 27, 2018. Certified Record (C.R.) at 3. The Board declared Barksdale delinquent as a technical parole violator (TPV) on November 6, 2017. C.R. at 11. Approximately a week later, Barksdale was involved in a high-speed car chase with police, from which he fled. Police found drugs and drug paraphernalia in the car Barksdale was driving.

The Board issued a warrant to recommit and detain Barksdale on November 16, 2017, and he was arrested pursuant to that warrant on the same date. C.R. at 12. He also waived his right to a revocation hearing on the date of his arrest.

Subsequently, Barksdale was criminally charged with several offenses related to the November incident, C.R. at 35, for which the Court of Common Pleas of Crawford County set monetary bail on December 7, 2017. C.R. at 75. However, Barksdale did not post bail and remained incarcerated in a state correctional institution (SCI) for the entirety of his pre-sentencing period. C.R. at 53.

---

[2] From our review, the page references to the certified record in *Barksdale I* correspond to the same pages in the certified record in this case.

In January 2018, the Board recommitted Barksdale as a TPV to serve six months in SCI-Mercer pending disposition of his criminal charges. C.R. at 30. In its January 19, 2018, recommitment order, the Board recomputed his maximum date as November 6, 2018, using November 16, 2017, as the "custody for return date" from which the unexpired term on his original sentence, known as backtime, may be calculated. C.R. at 28. At that time, he owed 355 days of backtime.

On May 31, 2018, Barksdale was sentenced on the new charges to a term of six to 24 months' incarceration. *See* C.R. at 70-71 (Sentencing Order). Specifically, the sentencing order credited Barksdale for his pre-sentence confinement of 175 days (from December 7, 2017, to May 30, 2018), and stated that the sentence on the new charges "shall run *consecutive* to all other sentences being served." C.R. at 70 (emphasis added).

Following sentencing, Barksdale waived his revocation hearing before the Board and admitted that he was convicted of new criminal offenses. C.R. at 54.

By order dated July 12, 2018, the Board recommitted Barksdale as a convicted parole violator (CPV) to serve 11 months, concurrent with his 6-month recommitment as a TPV. C.R. at 88. The Board then exercised its discretion and credited Barksdale for the time spent at liberty on parole from 2011 until the incident in November 2017. *Id.* The Board calculated Barksdale's new maximum date as April 30, 2019. C.R. at 72.

Barksdale filed an administrative remedies form on August 2, 2018, challenging the Board's calculation of his new maximum date. C.R. at 90-93. He asserted the correct maximum parole violation date was November 6, 2018, based on the date of his detention solely on the Board's warrant. The Board denied Barksdale's request for administrative relief on September 28, 2018, without explaining its calculation of the date. *See Barksdale I.*

Barksdale petitioned this Court for review of the Board's calculation, asserting the maximum date should have been calculated using the date the Board issued its detainer as his custody for return date. Without reviewing the merits, this Court determined the Board failed to provide a sufficient explanation for its decision under Section 507 of the Administrative Agency Law, 2 Pa. C.S. §507. *See id.* Therefore, we vacated the Board's order and remanded the matter directing the Board to explain its calculation.

Pursuant to this Court's remand directive, by decision mailed September 10, 2019, the Board issued an amended response to Barksdale's administrative remedies form submitted in August 2018. C.R. at 96-97. In its amended response, the Board corrected the deficiencies identified in *Barksdale I. Id.*

Specifically, the Board explained it paroled Barksdale from an SCI on May 3, 2011, with a maximum date of October 27, 2018. At that time, Barksdale had 2734 days remaining on his sentence. The Board's decision to recommit him as a CPV authorized the recalculation of his sentence to reflect a credit for the time he spent at liberty on parole from May 3, 2011, to November 6, 2017, a total of 2379 days. Reducing the sentence by that amount (2734 - 2379), Barksdale had 355 days

4

remaining on his unexpired term, *i.e.*, backtime. Barksdale also received credit for the time he served from November 16, 2017, to December 7, 2017 (21 days). Subtracting this additional 21 days left him with 334 days on his unexpired term.

Barksdale petitioned for review from the Board's amended decision, naming the Board and SCI-Mercer Records Department as respondents.

## II. Discussion

On appeal,[3] Barksdale challenges the recalculation of his maximum parole violation date. He argues the correct maximum date is November 6, 2018, when properly calculated from November 16, 2017, which was the date he was placed in custody solely on the Board's warrant as a TPV.

The Board counters that Barksdale became available to serve his backime on the date of sentencing, which was May 31, 2018. It posits that the new sentence had to be served consecutively to the original sentence, and he "became available" to serve his backtime on the date of sentencing because "he had previously been recommitted as a [TPV]." Board's Br. at 7 (quoting *Snyder v. Pa. Bd. of Prob. & Parole*, 701 A.2d 635, 637 (Pa. Cmwlth. 1997)).

There is no dispute Barksdale owed 2734 days of backtime on his unexpired term at the time of his delinquency on November 6, 2017. The Board credited Barksdale for the time he spent at liberty on parole, totaling 2379 days,

---

[3] Our review of the Board's decision is limited to determining whether constitutional rights were violated, whether the decision is in accordance with the law, and whether necessary findings were supported by substantial evidence. *Plummer v. Pa. Bd. of Prob. & Parole*, 216 A.3d 1207 (Pa. Cmwlth. 2019).

leaving 355 days (2734 - 2379) on his unexpired term. The allocation of these 355 days is in dispute. Because the number of days is mathematically the same, the only disagreement between the parties relates to the proper date to start the calculation.

The Board credited Barksdale with the 21-day period between November 16, 2017, and December 7, 2017, while he was in custody solely on the Board's detainer. Subtracting that 21 days from the 355 days of backtime, Barksdale owed 334 days on his unexpired term. To derive the maximum parole violation date of April 30, 2019, the Board added the 334 days to May 31, 2018, the date he was sentenced on the new charges.

By contrast, Barksdale contends the 355 days should have been added to November 16, 2017, such that his maximum parole violation date would be November 6, 2018. He asserts November 16, 2017, is the proper custody for return date because that is the date he became available to serve his unexpired term based on his status as a CPV.[4] This Court is tasked with determining the proper custody for return date from which the parole violation maximum date may be calculated, November 16, 2017 (date solely detained on Board's warrant), or May 31, 2018, (date of sentencing on new charges).

In his administrative remedies form, Barksdale cited this Court's decision in *Smith v. Pennsylvania Board of Probation & Parole*, 133 A.3d 820 (Pa.

---

[4] We note Barksdale requests this Court to determine that his parole violation maximum date is November 6, 2018, which is the recomputed maximum date stated in the Board's initial order to recommit. Certified Record (C.R.) at 28. However, that order to recommit was based on Barksdale's status as a TPV, not a CPV. Relevant here, following his sentencing on the new conviction, the Board issued another order to recommit in July 2018, stating that his custody for return date was May 31, 2018, the date of sentencing for the new convictions.

Cmwlth. 2016), *rev'd*, 171 A.3d 759 (Pa. 2017), as support for his argument that his maximum parole violation date should be calculated as November 6, 2018. However, he did not recognize the subsequent reversal of this Court's decision by our highest court. *See* 171 A.3d 759 (Pa. 2017) (*Smith II*). In *Smith II*, our Supreme Court held that the defendant was ***not*** entitled to credit toward his original sentence for time detained on both the Board's detainer for parole violations and for his pre-trial incarceration on new charges. That is consistent with the Court's earlier holding that "where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence." *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 309 (Pa. 2003).

In this case, the period Barksdale was detained on both the Board's detainer and on the new charges was from December 7, 2017, to May 31, 2018. That time was credited to Barksdale's new sentence. That is appropriate based on the sentencing order and current case law. *See id.*

After careful review of the record, it is apparent that Barksdale received credit for all his time in custody. He received credit for the 21 days he served prior to bail being set as to his then-pending criminal charges corresponding to November 16, 2017, to December 7, 2017. *Martin*. He received credit for his pre-sentence confinement (175 days) from December 7, 2017, to May 30, 2018, toward his new sentence. *See* C.R. at 70-71; *see also Smith II*. Moreover, the sentencing order stated the sentence on the new charges "shall run consecutive to all other sentences being served." C.R. at 70. The time for which Barksdale received credit on his new sentence may not also be credited to his original sentence.

It appears that Barksdale believes he is entitled to credit on *both* of his sentences for the same period of time. But there is no legal support for his assertion; the case law Barksdale cites in support of his position has been reversed or overruled. *See, e.g.*, *Banks v. Pa. Bd. of Prob. & Parole*, 136 A.3d 1102 (Pa. Cmwlth. 2016), *vacated*, 176 A.3d 228 (Pa. 2017) (Table) (overruled in *Smith II*). Relying on *Banks*, Barksdale asserts he remained in the primary custody of the first jurisdiction, so he is "therefore considered borrowed."[5] *See* Pet'r's Br. at 11. However, this Court's decision in *Banks* was overruled by *Smith*. Barksdale is not entitled to have the same period of time (December 7, 2017, to May 31, 2018) applied to *both* the backtime owed on his original sentence and to the new sentence. He received credit for that period on his new sentence. *Smith II*.

All of the time Barksdale served is accounted for in the maximum parole violation date calculation. The Board credited him for the 21-day period (November 16, 2017, to December 7, 2017) toward his backtime such that 334 days of backtime remained. Barksdale became available to serve his unexpired term on the date of sentencing, and we discern no error in the Board using that date as his custody for return date. Adding the 334 days of backtime to the May 31, 2018, custody for return date yields April 30, 2019, as the maximum parole violation date. Thus, the Board did not err in calculating the maximum parole violation date here.

---

[5] In his counseled brief, Barksdale argues that because he was consistently in custody of the Department of Corrections until his release on parole in September 2019, that he was "borrowed" from the primary jurisdiction (State) when he was serving pre-sentence confinement on the court of common pleas charges that was ultimately counted toward his new sentence. The issue of borrowed status is relevant when determining which jurisdiction has primary custody for sentence calculation. *See, e.g.*, *Fowler v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 67 C.D. 2013, filed Oct. 16, 2013), 2013 WL 5762355 (unreported) (involving detainee transfer from federal institution on federal charges and return to state institution). However, Barksdale does not indicate how the concept of primary custody and borrowed status affects the outcome and its relevance is not evident.

### III. Conclusion

For the foregoing reasons, we affirm the Board's order.

_____
J. ANDREW CROMPTON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Barksdale,              :
              Petitioner    :
                      :
       v.              :   No. 1426 C.D. 2019
                      :
Pennsylvania Board of Probation and  :
Parole and SCI Mercer Records     :
Department,                   :
            Respondents  :

## **O R D E R**

**AND NOW**, this 9th day of September 2020, the order of the Pennsylvania Board of Probation and Parole is AFFIRMED.

_____
J. ANDREW CROMPTON, Judge